CITY OF RED CLOUD, APPELLEE, V. FARMERS AND MERCHANTS BANKING COMPANY, IMPLEADED WITH JOHN O. YEISER ET AL., APPELLANTS.

FILED JANUARY 3, 1906.   No. 14,438.

Evidence examined, and *held* sufficient to sustain the judgment.

APPEAL from the district court for Webster county: ED L. ADAMS, JUDGE. *Affirmed.*

*John C. Cowin,* for appellants.

*George R. Chaney, J. R. Mercer, B. McNeny* and *T. H. Matters,* contra.

OLDHAM, C.

This is an action in the nature of a creditor's bill in aid of execution, which is before this court a second time for review. The opinion in the first hearing of the cause in this court is unofficially reported in 3 Neb. (Unof.) 544. In this opinion, delivered by ALBERT, C., the issues arising on the pleadings and evidence are fully set forth and need not be again stated. A judgment for the plaintiff at the first hearing of the cause was set aside by this court, for the reason that plaintiff had failed to establish by competent evidence its judgment at law against the Farmers and Merchants Banking Company, on which its right of action depended. At a second trial of the cause in the district court, plaintiff's judgment against the banking company was properly established, and judgment was again ren-

dered in favor of the plaintiff. To reverse this judgment defendants have appealed to this court.

The only question now presented is as to the sufficiency of the testimony to sustain the judgment of the trial court, the material question being as to whether or not the evidence shows that defendant Yeiser purchased the premises in controversy in good faith relying on the record, and without knowledge of the fact that the lands were held in trust by N. S. Harwood and his grantor, James McNeny, for the banking company, judgment debtor of the plaintiff. The facts underlying the several conveyances are these: In June, 1893, the Farmers and Merchants Banking Company of Red Cloud, Nebraska, closed its doors and went into voluntary liquidation. Among the creditors of this institution was the city of Red Cloud, plaintiff in this cause of action, which had about $6,000 on deposit in the bank at the time it closed its doors. At that time W. S. Garber was its cashier and George O. Yeiser, father of the defendant, was its vice-president. After the bank had suspended business, its officers and directors asked and received from its depositors an extension of time for the purpose of meeting its indebtedness. W. S. Garber took charge of the affairs of the bank as liquidating agent. One of the creditors of the bank, Thomas Ryan, procured a judgment against it for a little more than $1,000 and caused an execution to be levied on the lot in controversy, on which the building of the bank had been erected. When this execution was levied on the building, W. S. Garber borrowed sufficient funds from the state bank of Red Cloud to satisfy Ryan's judgment. In securing the loan of this money, he gave his own note, and deposited collateral of the suspended bank, and also agreed with the cashier of the state bank that, if the loan was not promptly met, he would have the property, which was advertised for sale, bid in in the name of the cashier of the state bank, as additional security for the loan. The loan, however, was paid by Garber and the judgment of Ryan was paid and satisfied, but, as testified to by Garber, for the pur-

pose of preventing other creditors of the banking institution from levying on the building, the sale was had and the property was bid in at the sale by Garber, and the sheriff was directed to make the deed to N. S. Harwood, of Lincoln, Nebraska, who knew nothing about the transaction. When the deed was executed by the sheriff, it was delivered to Garber and recorded by him. Subsequently, defendant Yeiser, who, as attorney for one Bedford, had procured two individual judgments against W. S. Garber in the district court for Webster county, began negotiations with Garber for the settlement of these judgments. Garber, in the meantime, had removed to the state of Colorado and had been succeeded by George O. Yeiser as liquidating agent of the bank. According to the testimony, it fairly appears that defendant Yeiser made an agreement with Garber, by which Garber was to get a deed for the lot in controversy from N. S. Harwood in favor of Yeiser, and was to procure certain other conveyances of other lands and the satisfaction of a mortgage in the settlement of the Bedford judgments.

The exact nature of the representations which Garber made to Yeiser as to the condition of the title to the lot in controversy is not entirely clear from the record, but it is clear and unequivocal that Garber notified N. S. Harwood of the reason that he had placed the property in his (Harwood's) name, which was that it might be held in trust for the creditors of the banking institution. It is also clearly in evidence that Garber directed Harwood to forward a quitclaim deed to James McNeny, so that the interests of the creditors of the bank might be conserved. After James McNeny had received the quitclaim deed from Harwood, Yeiser applied to him, by Garber's direction, for a deed to the premises. Here the testimony is in sharp conflict. McNeny testifies, in substance, that he told Yeiser that he could only convey the premises as trustee for the creditors of the bank, and that he refused to give a warranty deed, as Yeiser requested, and gave only a special warranty against those claiming under

him (McNeny). Yeiser claims that no such conversation took place until after he had received and recorded the deed. The circumstances, however, seem to corroborate McNeny, for he gave only a special and not a general warranty deed to the lands. And again, Harwood, whom all the evidence shows never to have had nor claimed any interest in the lands, conveyed to McNeny by quit-claim deed, so that the character of the conveyances, on which Yeiser's title depends, was of itself sufficient to have put him on inquiry as to the real condition of the title.

We therefore conclude that the evidence is sufficient to sustain the judgment of the trial court, and we recommend that the judgment be affirmed.

· AMES and LETTON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.